UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTONIO MALLET,

                    Plaintiff,                    09 **Civ.** 8430 (JGK)

         - against -                              **MEMORANDUM OPINION**
                                                  **AND ORDER**
ROBERT T. JOHNSON, BRONX COUNTY DISTRICT
ATTORNEY,

                    Defendant.

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11-3-10

JOHN G. KOELTL, District Judge:

     The Court has received the attached application for the

appointment of counsel.  The Court of Appeals for the Second

Circuit has articulated factors that should guide the Court's

discretion to appoint counsel to represent an indigent litigant

under 28 U.S.C. § 1915.  See Hodge v. Police Officers, 802 F.2d

58, 61-62 (2d Cir. 1986); Jackson v. Moscicki, No. 99 Civ. 2427

(JGK), 2000 WL 511642, at *4 (S.D.N.Y. Apr. 27, 2000).  For the

Court to order the appointment of counsel, the plaintiff must,

as a threshold matter, demonstrate that his claim has substance

or a likelihood of success on the merits.  See Hodge, 802 F.2d

at 61-62.  Only then can the Court consider the other factors

appropriate to determination of whether counsel should be

appointed: "plaintiff's ability to obtain representation

independently, and his ability to handle the case without

assistance in the light of the required factual investigation, the complexity of the legal issues, and the need for expertly conducted cross-examination to test veracity." Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172 (2d Cir. 1989).   The plaintiff has failed to show that his claims are likely to have merit, and the application for the appointment of counsel is therefore **denied without prejudice.**

SO ORDERED.

Dated: New York, New York
     November 1, 2010

                                           John G. Koeltl
                             United States District Judge

RECEIVED
OCT 2 0 2010
CHAMBERS OF
JOHN G. KOELTL
U.S.D.J.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANTONIO MALLET,                              :
                              Plaintiff,     :
            -against-                        :
                                             :
ROBERT T. JOHNSON, BRONX COUNTY              :
DISTRICT ATTORNEY,                           :
                              Defendant.     :
-------------------------------------------------------------X

**APPLICATION FOR THE
COURT TO REQUEST
COUNSEL PURSUANT TO
18 U.S.C. § 3006A(g)**

09-CV-8430 (JGK)

1.      Name of applicant is Antonio Mallet.

2.      Explain why you need a lawyer in this case. I need a lawyer assigned to assist me

in litigating the serious issues dealing with evidence the Plaintiff requested. My case meets the

criteria for appointment of counsel under *Cooper* and *Hodge* (likely merit, independent efforts at

obtaining counsel, need for factual investigation, complex legal issues, etc.) It appears that the

Plaintiff meets at least two of these criteria's. He has dutifully albeit unsuccessfully sought

representation by counsel. Additionally, the thrust of his § 1983 action is obtaining ballistic and

fingerprint evidence and, in present counsel's experience, obtaining evidence is something that

lawyers can do far more successfully than imprisoned pro se litigants. *See, also*, *Washington v.

Smith*, 219 F.3d 620, 631 (7th Cir. 2000)(expecting incarcerated prisoner to produce witnesses

wholly unreasonable). Plaintiff request oral argument on his motion to dismiss via tele-

conference, or by appointed counsel.

3.      **I declare under the penalty of perjury that the foregoing is true and correct.**

Pursuant to 28 U.S.C. § 1746, the information herein contained is true and accurate under the

penalty of perjury.

Dated:      October 20 2010
            Napanoch, New York

_____
ANTONIO MALLET, *pro se*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANTONIO MALLET,                              :

                     Plaintiff,      :

        -against-                          :          **CERTIFICATE OF SERVICE**

                                :

ROBERT T. JOHNSON, BRONX COUNTY    :          09-cv-8430 (JGK)

                    Defendant.     :
-------------------------------------------------------------X

       I, Antonio Mallet, plaintiff *pro-se,* declare under penalty of perjury that I have served a copy of attached Application for the Assignment of Counsel (18 USC § 3006A[g]) and all supporting papers upon the following and concerned parties:

        **Attn**: Clerk of the Court           Shlomit Aroubuas, A. C. C.
        Hon. John G. Koeltl, U.S.D.J.     Michael  A. Cardozo, Esq.
        United States District Court       Corporation Counsel for City of New York
        Southern District of New York     100 Church Street, Room 3-188
        500 Pearl Street               New York, New York 10007
        New York, New York 10007      *Attorney for Defendant Johnson*

       By placing the following in a properly sealed envelope and deposited into the mailbox located within Eastern Correctional Facility, P.O. Box 338, Napanoch, New York 12458-0338, and forwarded via United States Postal Service, and addressed to the concerned parties.

Dated:  October **29** 2010

                                 Respectfully Submitted,

                                 Antonio Mallet,
                                 Plaintiff pro-*se*

Pursuant to 28 U. S .C. § 1746, the information herein contained is true and accurate under the penalty of perjury.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

ANTONIO MALLET,              :

                 Plaintiff,    :

        -against-             :          **AFFIDAVIT OF SERVICE**

                                      :

ROBERT T. JOHNSON, BRONX COUNTY   :         09-CV-8430 (JGK)
DISTRICT ATTORNEY,

                 Defendant.   :

-------------------------------------------------------------X

State of New York     )
County of Ulster       )     ss.:

       On the _21_ day of _OCTOBER_____ 2010, I have served a copy of the following:

Notice of Motion in Opposition to Summary Judgment; and, all supporting papers, upon the following

and concerned parties:

Shlomit Aroubas, Esq.
Assistant Corporation Counsel
Michael A. Cardozo, Esq.
Corporation Counsel for the City of New York
100 Church Street, Room 3-188
New York, New York 10007
*Attorney for Defendant Johnson*

       By placing the documents into a mailbox located at Eastern Correctional Facility, P.O. Box 338, Napanoch, New York 12458-0338, and to be delivered via the United States Postal Service to the aforementioned parties.

                                              _____
                                              Antonio Mallet
                                              Petitioner *pro-se*

Sworn to before me this

_21st_ day of _October____, 20 _10_

_____
       Notary Public

      Notary Public State of New York
           Thomas J. Briggs
     ID# 01BR6137871 Ulster County
     My Commission Expires 20 _13_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANTONIO MALLET,                                    :

                                        Plaintiff,   :      **NOTICE OF MOTION IN**
                                                     :      **OPPOSITION TO SUMMARY**
            -against-                                :      **JUDGMENT**
                                                     :
ROBERT T. JOHNSON, BRONX COUNTY      :
DISTRICT ATTORNEY,                                :      09-CV-8430 (JGK)
                                        Defendant.   :
-------------------------------------------------------------X

      **PLEASE TAKE NOTICE**, that on the attached affidavit of Antonio Mallet, plaintiff

*pro-se*, and on the motion for the Defendant (Robert T. Johnson, Esq. – Office of the District

Attorney, Bronx County) for summary judgment pursuant to Rule 56 of the Federal Rules of

Civil Procedure, and the affidavits attached hereto, the Plaintiff will move this Court of the

return date of the argument of the Defendant's Motion, for an order pursuant to Rule 56 granting

the plaintiff summary judgment for the relief demanded in the complaint and striking out the

answer of the Defendant and for such other and further relief as this Court deems just and

equitable.

Dated:      September 7, 2010
             Napanoch, New York

                                   Respectfully Submitted,

                                   Antonio Mallet
                                   Plaintiff *pro-se*
                                   P.O. Box 338
                                   Napanoch, New York 12458

To:    Shlomit Aroubas
       Assistant Corporation Counsel

       Michael A. Cardozo, Esq.
       Corporation Counsel for the City of New York
       100 Church Street, Room 3-188
       New York, New York 10007
       *Attorney for Defendant Johnson*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ANTONIO MALLET,                                    :

                           Plaintiff,       :

        -against-                                       :

                                   :

ROBERT T. JOHNSON, BRONX COUNTY        :

DISTRICT ATTORNEY          Defendant.   :

------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT
OF MOTION FOR
SUMMARY JUDGMENT**

09-CV-8430 (JGK)

State of New York     )

County of Ulster       )    ss.:

Antonio Mallet, being duly sworn, deposes and says:

      1.      I am the plaintiff pro-se, in the above-captioned matter, and make this Affidavit in

Opposition to the Defendant's Motion for Summary Judgment based upon his knowledge, upon

Information belief, and as to those portions stated, upon information and belief, I believe them to

be true.

      2.      The plaintiff contends for the reasons stated below, the defendant's motion for

summary judgment should be denied.

      3.      The plaintiff's causes of action is viable because he is not using the § 1983 to

challenge the legality of his conviction, but to obtain access to the evidence to illustrate his

innocence which occurred as a direct result of the defendant's actions.

      4.      Importantly, in the initial complaint, the plaintiff demonstrated the defendant has

denied him his access to the evidence under sections 440.10 and 440.30(1-a) of the Criminal

Procedure Law, which has denied him of a liberty interest under the Fourteenth Amendment and,

clearly defined federal as determined by the Supreme Court; therefore, the issue is not precluded

by collateral estoppel.

5.      Furthermore, the plaintiff adequately demonstrated, the defendant's actions actually deprived him of an opportunity to make a conclusive showing of actual innocence under the Sixth and Eighth Amendments; therefore, he had adequately demonstrated a claim upon which relief can be granted; therefore, the defendant's motion judgment should be denied.

6.      In his request for relief, the plaintiff illustrated, the defendant's denial to the fingerprint evidence under C.P.L. §§ 440.10 and 440.30(1-a) with technological advances in evidence gathering, which can be retested to demonstrate he is actually innocent of the underlying offense deprived him to meaningful access to the evidence denied him of his constitutional right under the First Amendment; therefore, his complaint adequately stated a ground upon that relief could be granted upon, and the defendant's motion for summary judgment should be denied.

Stated another way, the plaintiff has demonstrated a question of fact as to whether the defendant has deprived him access to evidence for DNA testing violated the principle of fundamental fairness, and whether he was wrongfully deprived of his right to due procedural due process.

7.      Furthermore, in an administrative proceeding (CPLR § 7801, et., seq.), the plaintiff sought access to the evidence, via subpoena duces tecum (CPLR § 2301, et. seq.), which the defendant argued could not be turned over to him.  Moreover, instead of re-testing the evidence with their new technology to determine whether the fingerprint evidence inculpated the plaintiff as the perpetrator of the offense, the defendant argued, in a post-conviction motion, he should be barred from filing any additional pleadings challenging the legality of his conviction.

8.      Despite the plaintiff's unsuccessful challenges to obtain access to the evidence, in an administrative proceedings, he prevailed in a state court and obtained access to the evidence;

however, the only item he received as a result of his success was *photocopies* of the fingerprint evidence (the original prints cannot be obtained via Article 78 [Exhibit H]), at bottom of page of Initial Complaint, which cannot be tested with the New Technology  currently available to determine the actual perpetrator of the crime; therefore, he has demonstrated the state post-conviction procedures (C.P.L.440.10 and(C.P.L. § 440.30[1-a]) have wrongfully deprived him of his right to procedural due process; therefore, the defendant's motion for summary judgment should be denied (emphasis added).

9.     In addition, based on the defendant's contentions during the plaintiff's challenge to the legality of his conviction, the state court on more than one occasion (December 11, 2007, and January 7, 2009) denied him access to the evidence, as well as his challenge to the legality of his conviction; therefore, his claims are not time-barred because they were brought within the three-year statute of limitations period as required under New York law.

10.     The plaintiff contends, the defendant is not entitled to absolute or qualified immunity as a result of his action during the state court proceedings when they convicted him upon the testimony of a witness, the only person who placed him at the scene of the crime, and without the witness' testimony, it is a reasonable probability, the jury may have acquitted him of the underlying offense in absence of *any* physical evidence placing him at the scene of the crime who stated he got inside the car with the victim then subsequently got out of the car–shooting the victim twice in the head, witness statement (September 24, 1996 [Exhibit A]), however during the proceedings, the Medical Examiner testified the victim was shot one; Medical Examiner testimony (T. 279 [Exhibit B]); therefore, as a result thereof, the defendant's motion for summary judgment under the affirmative defenses of absolute and qualified immunity should be denied (emphasis added).

In conclusion, for the reasons stated above, the plaintiff contends, the defendant's motion for summary judgment should be denied, and the relief requested granted in all respects.

Respectfully Submitted,

Antonio Mallet
Plaintiff *pro-se*
P.O. Box 338
Napanoch, New York 12458

Sworn to before me

21 day of _October_ , 20 10.

_____
Notary Public

Notary Public State of New York
Thomas J. Briggs
ID# 01BR6137871 Ulster County
My Commission Expires 20 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

ANTONIO MALLET,
                       Plaintiff,   :

       -against-             :     **MEMORANDUM OF LAW**

ROBERT T. JOHNSON, BRONX COUNTY  :     09-CV-8430 (JGK)
DISTRICT ATTORNEY,
                  Defendant.  :

------------------------------------------------------------X

## Introduction

This Memorandum of Law is being submitted in Opposition to the Defendant's Motion for Summary Judgment under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

For the reasons stated, the plaintiff contends, the defendant's motion for summary judgment should be denied because the current vehicle (42 U.S.C. § 1983) is the appropriate vehicle to gain access to the evidence; his claims are not time-barred; he has stated a claim that relief can be granted to preclude summary judgment; his claims of being denied access to the evidence are not collaterally estopped; his claims are not collaterally estopped; and, the defendant is not entitled to absolute or qualified immunity.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

All of the facts all have been previously outlined in the initial complaint; therefore, there is no need to rehash the facts.

## RULE 12(b)(6) STANDARD FOR DISMISSAL

The plaintiff contends, the defendant's motion for summary judgment under the provisions of Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied in its entirety when he demonstrated in his initial complaint, the defendant's improper denial to access of the evidence that would illustrate his innocence adequately stated a ground upon which relief can be granted; therefore, the defendant's claims should be rejected. Bell Atlantic Corporation v. Trombly, 550 U.S. 544, 554-570 (2007) (to defeat a motion to dismiss for failing to state a claim upon which relief can be granted does not require a plaintiff to plead detailed factual information, it only requires him to substantiate the allegations of the complaint even if there are doubtful would entitle him to relief); Allaire Corporation v. Okumus, 433 F.3d 248, 249 (2nd Cir. 2006) (internal citations omitted); Hines v. City of Albany, 542 F.Supp.2d 218, 225-226 (N.D.N.Y. 2008) (in deciding motion to dismiss court must accept allegations of fact in complaint as true, drawing all interferences in plaintiff's favor).

Furthermore, the plaintiff contends, the defendant's motion for summary judgment should be denied because he has demonstrated the defendant's actions have effectively precluded him from gaining access to the evidence, which he illustrated in his request for relief. In accordance with clearly established precedent, this Court may rely on matters of public record in determining whether the complaint alleged a ground to which relief could be granted upon. Importantly, the plaintiff submitted an exhibit from the state court proceedings to illustrate the defendant's actions denied him access to the evidence (Initial Complaint [Article 78 Proceeding] Exhibit D); therefore, as a result thereof, their request for summary judgment should be denied. Pearce v. Manhattan Ensemble Theater, Inc., 588 F.Supp.2d 175, 178-179 (S.D.N.Y. 2007) (citing Chambers v. Time Warner, Inc., 282 F.3d 147 [2d Cir. 2002]).

2

## ARGUMENT

## <u>POINT I</u>

**THE PLAINTIFF IS NOT USING THE SECTION 1983 COMPLAINT TO CHALLENGE THE LEGALITY OF HIS CONVICTION** (Responding to Point I of the Defendant's Memorandum of Law, pages 6-7).

Contrary to the defendant's claims, the plaintiff is not using a section 1983 to challenge the legality of his conviction, however, he is using the section 1983 action to gain access to the evidence the defendant has denied him access to.  Clearly, the defendant's actions offend the Due Process Clause of the Fourteenth Amendment when a prisoner alleges he is actually innocent of a crime he is currently incarcerated for.  <u>McKithen v. Brown</u>, 565 F.Supp.2d 440, 450-466 (E.D.N.Y.  2008) (internal citations and quotations omitted).

In his initial complaint, the plaintiff illustrated the current an action to obtain access to the evidence and the current vehicle was the appropriate remedy to achieve that measure; therefore, as a result thereof, the defendant's contentions should be rejected, and dismissed. <u>Grier v. Klem</u>, 591 F.3d 672, 678 (3d Cir. 2010) (state prisoners can use the § 1983 as a vehicle to request the relief of evidence for post-conviction purposes, citing <u>McKithen v. Brown</u>, 481 F.3d 89 [2d Cir. 2007]]).

Moreover, the defendant's additional contentions should be rejected because the plaintiff *is not seeking damages*, but access to the evidence; therefore, his claims should not be dismissed as a matter of law (emphasis added).

## POINT II

**THE PLAINTIFF'S CLAIMS ARE NOT TIME-BARRED**
(Responding to Point II of the Defendant's Memorandum of Law, pages 8-9).

As an initial matter, the plaintiff's claims are not time-barred. On August 17, 2006, in a collateral attack on the legality of his conviction, he challenged the legality of his conviction and moved under the provisions of sections 440.10 and 440.30 of the Criminal Procedure Law to gain access to the fingerprint and ballistic evidence in his case.

In his request for relief, the plaintiff specifically requested the state court to order the defendant to turn over [any] evidence relating to [the] latent fingerprints in addition to the deformed lead bullet, which the defendant opposed. On May 31, 2007, the state court (Darcel D. Clark, J.,) denied the relief requested.

After a series of collateral attack (28 U.S.C. §§ 2244 and 2254) challenging the legality of his conviction, the plaintiff filed a request under the Freedom of Information Law (Public Officers' Law §§ 84-90) to gain access to the evidence with the New York City Police Department (hereinafter NYPD) currently being sought, which was denied. Shortly after he was denied access to the evidence, the plaintiff initiated an administrative proceeding (C.P.L.R. § 7801, et. seq.) against the NYPD, which was successful in part.

In the proceedings below, as instructed by the state court, the NYPD provided the plaintiff with limited access to the fingerprints, that is, the NYPD provided him with *photostatic copies* of the fingerprints (Exhibit C, Complaint) which cannot be used to conduct *any* tests on them (emphasis added).

As a result of the partial victory, the plaintiff returned to the state court attempting to once again to gain access to the fingerprint and ballistics evidence by challenging the legality of

4

his conviction under the provisions of sections 440.10 and 440.30(1-a) of the Criminal Procedure Law, which the defendant opposed, and subsequently denied on January 7, 2009 (Darcel D. Clark, J.) (Exhibits B and C, Complaint).

Contrary to the defendant's contentions, the plaintiff's claims did not accrue at the conclusion of his trial on March 18, 1999. The gravaman of the plaintiff's allegations accrued in 2009, when he was denied access to fingerprint evidence in the state court, the last court to render a determination on his request, and as result thereof, the current action was filed well before the three-year statute of limitations period expired, and in accordance with clearly defined federal as determined by the Supreme Court. Wallace v. Kato, 549 U.S. 387-388 (2007) (citing Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., 522 U.S. 129, 200-201 [1997] [statute of limitations period started when cause of action arose]); Harris v. City of New York, 186 F.3d 243, 247-248 (1988) (internal citations omitted).

In sum, for the reasons stated, the claims relating to the plaintiff's denial of access to the evidence that would implicate his overriding liberty interest should not be dismissed as time-barred.

## POINT III

### PLAINTIFF'S CLAIM OF BEING DENIED ACCESS TO THE FINGERPRINT EVIDENCE CLEARLY ILLUSTRATED A DEPRIVATION OF DUE PROCESS TO JUSTIFY THE RELIEF REQUESTED (Responding to Point III of the Defendant's Memorandum of Law, pages 9-11).

The plaintiff illustrated he was denied access to the fingerprint evidence during the state court post-conviction proceedings (C.P.L. §§ 440.10 and 440.30[1-a]) clearly demonstrated he was actually innocent of the underlying offense to support a valid claim under section 1983 that his procedural due process rights under the Fourteenth Amendment was abridged to justify the requested relief.  Under clearly defined federal law as determined the Supreme Court, the Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of a protected liberty interest without providing adequate procedural protection.  District Attorney's Office v. Osborne, ___ U.S. ___, 129 S.Ct. 2308, 2318-2321 (2009) (internal citations and quotations omitted).

Here, during the state court proceedings, the defendant's proof of guilt against the plaintiff was (1) primarily based on the testimony of an eyewitness who gave conflicting accounts about the incident, which was rebutted by the Medical Examiner; (2) the sole eyewitness who placed the plaintiff at the scene of the crime testified for a deal and/or benefit; and, (3) under Osborne, the plaintiff's request to re-test the fingerprint evidence with the technological advances in evidence gathering would likely produce a conclusive result excluding him as being the perpetrator of the offense.

Moreover, during collateral review of his claims, the plaintiff sought access to the evidence under the provisions of Criminal Procedure Law § 440.30(1-a) to prove his innocence, and argued based on the evolving technological advances in evidence gathering, the pre-

inconclusive results (See Plaintiff's 1983), once re-tested, may prove his innocence, and the defendant's failure to provide him with access to the evidence infringed upon his protected liberty interest. <u>Figueroa v. Morgenthau</u>, 09 Civ. 4188 (DC), N.Y.L.J., (S.D.N.Y. [December 1, 2009]) (request for access to the evidence denied when plaintiff was unable to demonstrate another person committed the crime).

Undoubtedly, the Court, in <u>Osborne</u>, clearly held: "a criminal defendant has a liberty in proving their innocence through newly discovered evidence," however, if a criminal defendant has made a colorable claim of actual innocence and attempted to utilize the appropriate existing state court procedures to demonstrate it and has been denied the opportunity to do so, as it was done here, then the existing procedures offend the cherished principle of fundamental fairness are constitutionally inadequate to cure the deprivation stemming from the Due Process Clause of the Fourteenth Amendment, and violated clearly established Supreme Court precedent. <u>Yarris v. County of Delaware</u>, 465 F.3d 129, 142-143 (3d Cir. 2006) (internal quotations omitted).

Furthermore, the two authorities (<u>McLean v. Brown</u>, 08-CV-5200 [JG], 2010 U.S. Dist. LEXIS 63603, *22-23 [E.D.N.Y.] and <u>Nwobi v. Kelly</u>, 06-CV-4848 [JG], 2006 U.S. Dist. LEXIS 73036 *7-9 [E.D.N.Y.]) relied upon by the defendant cannot defeat the plaintiff's claim of being denied access to the evidence when the plaintiffs' contended they were being denied access to the evidence and sought damages to compensate for the defendants' failure to comply with the Due Process Clause of the Fourteenth Amendment.

Here, the relief being sought is not for damages, but access to the fingerprint evidence and the police officer's departmental file, so the plaintiff can demonstrate he is actually innocent of the underlying offense, and present the issue to a state forum, vying for his liberty. <u>Newton v. City of New York</u>, 2010 WL 323050 (S.D.N.Y.) (internal citations and quotations omitted).

Moreover, although the plaintiff's request for access to post-conviction evidence can be achieved by filing a Freedom of Information Law (Public Officers' Law §§ 84-90) request (it does not prove a successful applicant access to the evidence) and if denied, by pursuing an administrative action (C.P.L.R. § 7801, et. seq.); however, these steps were already taken, but with limited results, does not illustrate these procedure are constitutionally adequate to protect his post-conviction interests. In fact, the plaintiff's limited access to the evidence in this case turned out to be *photostatic copies* of the request material which could not be tested to make a positive analysis, much less a conclusive result as to the actual perpetrator of the crime; therefore, the defendant's contentions are meritless, and should be dismissed (emphasis added).

Contrary to the defendant's claims, the plaintiff alleged the deprivation of his constitutional right to due process was violated when the defendant repeatedly denied his request to re-test the fingerprint evidence under the provisions of Criminal Procedure Law § 440.30(1-a) after a specific request was made. In accordance with clearly established precedent (Newton, 2010 WL 323040, at *4) once a specific request for evidence has been made by a criminal defendant, it becomes the duty of the District Attorney's Office to locate the evidence and re-test it, which did not happen here (Exhibit A, Complaint).

Furthermore, the plaintiff followed the appropriate procedures to achieve that measure, he also petitioned for the requested evidence in an administrative proceeding after his previous attempts to achieve the evidence turned out to be fruitless. Moreover, while it is true the plaintiff's claims have been previously litigated in a state forum, however, this does not illustrate his claims were speculative or meritless when the defendant has not illustrated they have re-tested the evidence, and the inconclusive result resulted in a positive identification of the actual perpetrator of the crime, and that person is him.

In sum, for the reasons stated, the plaintiff contends, he had demonstrated the defendant has violated his right under the Due Process Clause of the Fourteenth Amendment, and the claim should prevail as a matter of law.

### POINT IV

**PLAINTIFF'S CLAIM OF BEING DENIED ACCESS TO THE FINGERPRINT EVIDENCE CLEARLY ILLUSTRATED A DEPRIVATION OF DUE PROCESS TO JUSTIFY THE RELIEF REQUESTED** (Responding to Point IV of the Defendant's Memorandum of Law, pages 11-14).

Contrary to the defendant's contentions, the plaintiff's claims are not barred from this Court's review because during state and post-conviction review of his claims, the issue was found to be lacking in merit, purely speculative, and would not have changed the outcome of the proceedings (Mallet v. Miller, 432 F.Supp.2d 366, 377 [S.D.N.Y. 2006] [habeas petitioner denied relief under Brady when he argued fingerprint evidence was withheld, and failed to illustrate latent fingerprint evidence was of value to make a positive identification], recons. denied, 438 F.Supp.2d 276 [S.D.N.Y. 2006]), recons. denied, 442 F.Supp.2d 156 [S.D.N.Y. 2006]], recons. denied, 553 F.Supp.2d 336 [S.D.N.Y. 2008] (pages 5-6, Exhibit B and pages 6-7, Exhibit C).

Moreover, neither forum (state or federal) rendered a determination on the issue of whether the plaintiff's claims necessitated access to the evidence, nor did they determine whether he was entitled to access to the evidence under the Due Process Clause of the Fourteenth Amendment; therefore, as a result thereof, the claims are not barred from this Court's consideration. Newton, 2010 WL 323050, at *9; McKithen v. Brown, 656 F.Supp.2d 440, 493 (E.D.N.Y. 2008) (quoting NRLB v. Thalbo Corp., 171 F.3d 102, 109 [2d Cir. 1999] [litigation of an issue is not barred by collateral estoppel if decision was not necessary to judgment]).

Furthermore, the defendant's claims are wrong. The plaintiff's request for access to the evidence fall squarely within the parameters of section 1983 litigant; however, the issue of whether he will be successful in his endeavors after obtaining access to the requested material is purely an entirely different matter, which cannot be prematurely decided without granting the plaintiff access to the evidence. Grier v. Klem, 591 F.3d at 679.

In addition, at the time of the plaintiff's trial in 1999, the test conducted on the fingerprints resulted in an inconclusive finding. The plaintiff's contends, if the fingerprint and ballistics evidence been tested today with the new technology, it would prove his innocence, which is germane to the issue presented; however, after a specific request was made for the fingerprint evidence to be re-tested by the defendant, it was not, despite the fact the new technological advances in evidence gathering; therefore, the issue is ripe, and remains a genuine issue that needs to be addressed.[1] McKithen v. Brown, 565 F.Supp.2d at 489 (denial of access to evidence shocks the conscience when a prosecutor refuses to honor a prisoner's specific request for access to evidence for testing).

In sum, the plaintiff's claims set forth a meritorious claims upon which relief can be granted; the state and federal courts determination of denying him access to the evidence to re-test it resulted in an unreasonable application of clearly defined federal law as determined by the Supreme Court (Osborne, Supra); therefore, the defendant's contentions should be rejected, and the relief requested is obtainable under the provisions of sections 440.10 and 440.30(1)(a) of the Criminal Procedure Law.

---

[1]      Michael Daly, Good Cop Never Gave Up On Cold Case, New York Daily News, March 25, 2010, at page 9 (convicted felon re-arrested for crime using latest advances in latent fingerprinting technology); A FUGITIVE on the run for 31 years after killing a Queens man was nabbed in Virginia, thanks to new fingerprint technology, prosecutors said yesterday. New York Daily News, July 30, 2005. See (Exhibit C).

## POINT V

**THE PLAINTIFF'S CLAIM FOR BEING DENIED ACCESS TO THE COURTS AS A RESULT OF HIM BEING DENIED ACCESS OT THE EVIDENCE STATED A VALID CLAIM ON THE INFRINGEMENT OF WIDELY KNOWN CONSTITUTIONAL RIGHT** (Responding to Points V and VI of the Defendant's Memorandum of Law, pages 14-17).

### A.    Access to the Courts

The defendant has misconstrued the plaintiff's denial of access to the courts claim. Contrary to the defendant's contentions, this action is not about the inadequacies of the prison law library or the legal assistance program, which if true, would necessitate the dismissal of the present action for the plaintiff's failure to enjoin the proper party, the Commissioner of the New York State Department of Correctional Services.  Hines v. City of Albany, supra.

Here, the gravaman of the plaintiff's claims surround the fact that the defendant's actions have repeated denied him access to the evidence, hampering his ability to provide his innocence, which would undermine the outcome of the proceedings.

Moreover, the plaintiff contends, he has a right to access of the evidence because it is in the government's possession (officer's departmental files [Frails v. City of New York, 236 F.R.D. 116 [E.D.N.Y. 2006]] [allegations of excessive force against police officer in civil rights claim will not be limited to record illustrating egregious conduct occurring within past ten years]; King v. Conde, 121 F.R.D. 180, 198 [E.D.N.Y. 1988] [internal citations and quotations omitted]); the re-testing of the evidence would be non-duplicative (latent fingerprints [Osborne, supra]); and, disclosure of the evidence being sought would undermine confidence in the outcome of the state court proceedings.  People v. Mallet, 278 A.D.2d 51 (1st Dept. 2000) (internal citations and quotations omitted).

11

Additionally, without access to the evidence, the plaintiff will not be able to re-open any proceedings, either state, or federal to demonstrate his innocence, and the defendant's action of continually denying him access to the evidence violates clearly defined federal law as determined by the Supreme Court, and fringes on his right under the Petition Clause of the First Amendment to meaningful access to the courts, which extends to all departments of the government (state and federal), which the defendant is apart of. Huminski v. Corsones, 384 F.3d 116, 142-148 (2d Cir. 2004) (citing cases); McKithen v. Brown, 565 F.Supp.2d at 458-459, 464, 469, 472-472, 475-476, 479-480, 485, 489, 492 (citing cases).

Furthermore, the defendant's own contentions illustrate, the plaintiff was denied habeas relief as a result of his failure to introduce sufficient evidence that would have undermined the state court proceedings (Mallet v. Miller, supra); therefore, the defendant's actions of being denied access to the evidence (latent fingerprints and officer's departmental file) have substantially hampered his ability to prove his innocence; therefore, as a result thereof, the plaintiff has adequately illustrated the defendant's actions has denied him meaningful access to the courts to justify the relief requested.

**B.    Equal Protection Violation**

Contrary to the defendant's claim, the plaintiff adequately illustrated an equal protection claim when he illustrated he was being denied access to evidence that would prove his innocence.

In his complaint, the plaintiff contended, his request for access to the evidence was denied by the defendant when other criminal defendants who were similarly situated and provided access to the evidence they were previously unable to gain access to unless they

12

petitioned a court of competent jurisdiction to receive the requested material. <u>McKithen v. Brown</u>, <u>supra</u>, 565 F.Supp.2d at 467; <u>Frails v. City of New York</u>, <u>supra</u>; <u>King v. Conde</u>, <u>supra</u>.

Although, the plaintiff's complaint may have been inartfully pleaded, clearly it nonetheless, conveyed the language which is widely used within the realm of section 1983 litigation, that is, he is being treated differently from others similarly situated; therefore, as a result thereof, the defendant's claims should be rejected as meritless.

**POINT VI**

> **THE PLAINTIFF ESTABLISHED THE DEFENDANT'S VIOLATION OF HIS CLEARLY DEFINED CONSTITUTIONAL RIGHT, AND HE IS NOT IMMUNE FROM THE RELIEF REQUESTED** (Responding to Points VII and VIII of the Defendant's Memorandum of Law, pages 17-23).

**A.    The Plaintiff's Claims Against the Defendant Are Not Barred Under the Eleventh Amendment**

Once again, the defendant has misconstrued the gravaman of the plaintiff's claim. Concedingly, the complaint does not allege the plaintiff is suing the defendant in his official and individual capacity, which if true, would be barred under the Eleventh Amendment of the Constitution; however, the issue currently before the Court is not about damages, but for injunctive relief; therefore, the defendant's affirmative defense under the Eleventh Amendment is inapplicable, and should be dismissed as meritless. <u>Hines v. City of Albany</u>, <u>supra</u>, 542 F.Supp.2d at 230-231.

**B.    The Defendant Is Not Entitled to Qualified Immunity**

More importantly, the defendant is not entitled to qualified immunity because the plaintiff is not suing for damages and the defendant's actions of continually denying the plaintiff access to the requested evidence to substantiate his innocence was clearly established at the time

13

of the conduct complained about, and recognized by the Second Circuit and the Supreme Court; therefore, the defendant should have reasonably knew his actions were unlawful, and abridged his constitutional right of reasonable access to the courts under the Petition Clause of the First Amendment. Huminski v. Corsones, 396 F.3d 53, 74, 80-89, 94 (2d Cir. 2004)(defendant is not immune from injunctive or prospective relief for an ongoing violation of federal law); King v. Simpson, 189 F.3d 284, 289 (2d Cir. 1989) (qualified immunity shields government officials from liability if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known).

In sum, the plaintiff's allegations illustrated the defendant violated a clearly established constitutional right; therefore, he is not immune from the relief requested. McKithen v. Brown, supra. At the time of plaintiff's trial, in 1999, this new fingerprint technology that prosecutors are now using to solve decades-old crimes was not available for the plaintiff's use at his trial. See, (Exhibit C). In plaintiff's case the fingerprint evidence was deemed inconclusive. See (Exhibit F of initial complaint, page 311 of trial record).

## CONCLUSION

Wherefore, plaintiff respectfully asks the Court to grant his present application for an appointment of counsel. For the reason stated, the plaintiff respectfully requests for this Court to deny the defendant's motion for summary judgment because he has stated a claim that relief can be granted upon, and for such other and further relief as this Court deems just and proper.

Dated: October 20, 2010
     Napanoch, New York

Respectfully Submitted,

Antonio Mallet
Plaintiff pro-se

14

# EXHIBIT

# A

9/24/96      10:30 PM

CELO HIRED MIKE TO STEAL A 93 GS 300
SO HE COULD USED THE PARTS TO FIXED
A GS 300 WHICH HE BOUGHT FROM
ALPINE.

MIKE TOLD ME THAT CELO ~~WAS~~ IS
GOING TO MEET UP WITH HIM AT WALLBAUM.
SO THAT HE COULD DELIVER THE CAR
TO HIM. MIKE DROVE AHEAD WHILE I BACKED
HIM UP FROM BEHIND. WHEN WE GOT TO
WALLBAUM, MIKE DROVE TO THE REAR OF
THE BUILDING. I STAYED A FEW CAR LENGHT AWAY
THERE WAS A WHITE CAR WAITING AT THE
CORNER OF THE BUILDING. I THEN SEE CELO
GOT OUT OF THE CAR AND APPROACH MIKE.
I RECONISE CELO BECAUSE I MET HIM BEFORE.
HE THEN WENT TO THE PASSANGER DOOR
AND BENT INSIDE THE CAR WHILE MIKE WAS
SITTING IN THE DRIVER'S SEAT. I THEN
SAW A SECOND GUY APPROACH THE CAR.
HE WENT OVER TO THE PASSANGER SIDE AND
CELO WENT ON THE DRIVER SIDE. CELO THEN
BENT INSIDE THE CAR TO SEE WHAT MIKE HAD
BEEN DOING. HE SLOWLY PULLED OUT OF THE CAR
TOOK A GUN OUT AND SHOT MIKE TWICE IN
THE HEAD. I SAW THIS BECAUSE THE DOME
LIGHT WAS ON IN THE CAR. THEY THEN
RAN INTO THEIR CAR AND SPED OFF. I DROVE
UP TO MIKE AND DISCOVERED WHAT HAD
HAPPEN. I THEN DROVE TO THE FRONT OF
THE BUILDING MADE A 911 CALL AT WHICH
THE COPS CAME. I WROTE THE ABOVE AFTER BEING READ
MY MIRANDA RIGHTS

# EXHIBIT

# B

279

1   LANCE A        Dr. Shmuter-for People-Direct

2                        (Pause.)

3        Q.   All right. Now doctor, do your records

4   reflect upon whom this autopsy was performed?

5        A.   Yes. It was performed by Dr. Montes.

6        Q.   But what was the name of the decedent, was

7   that ever determined?

8        A.   The name of the deceased was Michael

9   Ledeatte.

10       Q.   Now what injury did Michael Ledeatte

11  suffer that was revealed by the examination of

12  Dr. Montes?

13       A.   He had a single gunshot wound to the head

14  with entrance on the left side of the back

15  (indicating) behind the left ear.

16            MR. PIACENTILE:  The record should

17            reflect that the doctor pointed behind her

18            left ear with her left index finger.

19            THE WITNESS:  And exit on the right

20            side of his head (indicating).

21            MR. PIACENTILE:  The doctor again,

22            this time with her right index finger,

23            indicated to a spot on the upper

24            right-hand portion of the head.

25       Q.   Doctor, there was one bullet wound?

# EXHIBIT

# C

DAILY NEWS NYDailyNews.com

# Good cop never gave up on cold case

## Brings charge in '81 Bronx slay of hooker



Detective Malcolm Reiman of the Bronx Homicide Task Force helped bring charges against suspected serial killer Jesus Aguilera (inset) for the 1981 slaying of Tolila Moore. Photo by John Roca/Daily News

A very good detective did a very good job, and yesterday a suspected serial killer was brought into a Bronx courtroom charged with a killing that went unsolved for almost three decades.

"Jesus Aguilera, AKA Jesus Aguilero," the court officer called out.

Aguilera was led in from the holding area, bald and burly, the cold eyes behind his state-issue spectacles going colder still at the sight of Detective Malcolm Reiman.

Aguilera was already doing double life for two other killings and a third would not mean a minute more behind bars, but his reaction proved how much he still resented being caught.

Maybe Aguilera had always taken delight in thinking of poor 35-year-old Tolila Moore lying strangled in a shack on Minford Place and telling himself at least he got away with that one.

Maybe all Aguilera's killings were about power and control and now here he was, bested by this detective who is so diligent and dedicated as to represent justice.

Evil met good and good won, with considerable help beginning with a crime scene investigator back in the wild days of 1981.

The murder of a woman with a record for prostitution had drawn not even a shrug from the public and the press, but the investigator had taken the time and trouble to lift a fingerprint.

Additional help came from investigators in the latent print unit who periodically sought to identify the fingerprint as technology advanced.

In June of last year, the latent print unit called Lt. Sean O'Toole of the Bronx Homicide Squad and said it finally had a match, with one Jose Aguilera.

O'Toole assigned Reiman, who retrieved the case folder from the microfiche file. Reiman contacted the original detective, now retired, who had taken the case as far as the forensics of the time allowed.

"Good guy," Reiman later noted. "He did some good work." ●

Reiman got critical help from the medical examiner's office, which had retained scrapings taken from under Moore's fingernails. A DNA profile from the scrapings was fed into the database.

"Sure enough, a hit for our Mr. Aguilera," Reiman recalled.

Aguilera was already behind bars for strangling two others in 1981, Guillermo Graniela on Aug. 29 in what may have been a robbery and Josefina Cepeda on Sept. 17, just before and just after Moore's Sept. 2 killing. Cepeda had been lured to her death with the promise of designer jeans.

Reiman learned that this man he believes to be a serial killer came to America in the infamous Mariolito boatlift. He had been escorted by a Cuban prison officer to a boat bound for Key West. Aguilera was held in the refugee detention center at Fort Chafee in Arkansas, then released to his brother.

In May of 1981, Aguilera arrived in New York. He is believed to have strangled at least four people during the nine months before he was arrested. He was in Great Meadow prison when Reiman came to speak to him.

"He really wasn't shocked," Reiman recalled.

But he was not very happy if his reaction in Bronx court yesterday was any indication. He was asked to enter a plea.

"Innocent," he said through an interpreter.

That means he will go to trial. He will no doubt have more than a few icy stares for Assistant District Attorney Rachel Singer, who is as diligent and dedicated as everybody else involved.

Aguilera will also learn just how strong a case Reiman has built, gathering evidence from the property clerk's office as well as the ME, tracking down cops who responded to the scene and anybody who might have been a witness.

"Try to get everything I can," Reiman said.

The stepfather who identified Moore's body has died, as has her mother, and there were no other known family members to be in court when Aguilera was arraigned.

But there was Reiman, sitting quietly with a brown case folder marked "Tolila Moore, F/B/35, 11/02/1981, Method: Ligature Strangulation Homicide." The papers inside documented the work done by all those who joined to meet evil with good.

"It's very satisfying, actually," Reiman said.

mdaly@nydailynews.com

**Michael Daly**

# L.I. teen's suicide linked to cruel cyberbullies: police

COPS ARE investigating whether cyberbullies contributed to the suicide of a Long Island teen with nasty messages posted online after her death.

Alexis Pilkington, 17, a West Islip soccer star, took her own life Sunday following vicious taunts on social networking sites — which persisted postmortem on Internet tribute pages, worsening the grief of her family and friends.

"Investigators are monitoring the postings and will take action if any communication is determined to be of a criminal nature," Suffolk County Deputy Chief of Detectives Frank Stallone said yesterday.

Alexis' parents downplayed the Internet role, saying their daughter was in counseling before she ever signed up with formspring. me, a new social site, where many of the attacks appeared.

"I believe in my heart that cyberbullying wasn't the cause of Lexi's death," said her mother, Paula Pilkington. "This is a misunderstanding."

Alexis' father, Tom Pilkington, who serves in the NYPD, has said they will cooperate with the police probe.

Despite the negativity online, Paula Pilkington said the family is getting plenty of support in the real world.

"The outpouring of children coming to my house is amazing," she said. "There has to be some positive coming out of this."

**Oren Yaniv**

DAILY NEWS

# 31 years later, cops nab man in Qns. slay

**BY SCOTT SHIFREL**
DAILY NEWS STAFF WRITER

Saturday, July 30, 2005

A FUGITIVE on the run for 31 years after killing a Queens man was nabbed in Virginia, thanks to new fingerprint technology, prosecutors said yesterday.

Michael McKoy, 57, was an escaped convict in 1974 when he allegedly crashed his speeding car into a private limo driven by Michael Santora.

Santora, 50, of Flushing, a World War II veteran and former minor league Brook-

lyn Dodgers' pitching prospect, was killed instantly. The collision on Northern Blvd. in Corona tore his car in half.

McKoy, who had escaped from a Virginia prison where he was serving an 80-year sentence on robbery and assault crimes, was charged with manslaughter. He posted bail and skipped town.

A few months later, he was picked up in Virginia but authorities there didn't connect him to the New York case because the accident had injured McKoy's hands

and left his fingerprints unreadable at the time, a law enforcement source said.

A Virginia judge added six months to his sentence and sent him back to prison. He was paroled in the early 1980s and apparently stayed out of trouble since.

Two months ago, a Queens cold-case investigator was able to use modern fingerprint technology to track McKoy to Chesapeake, Va., where he lived with his wife and three children and worked as a construction superintendent. He was arrested

Wednesday.

"Although the incident took place in 1974 — over 30 years ago — police and prosecutors never closed the case," Queens District Attorney Richard Brown said. "Their relentless search finally bore fruit when [McKoy] was apprehended."

McKoy was brought to New York last night and taken to Rikers Island. He is slated to be arraigned Monday, where he faces four years in prison if convicted.

*sshifrel@nydailynews.com*

who really wants to get that sweaty?

"At the end of the interview, she said,